Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| OFICINA INDEPENDIENTE EN PROTECCIÓN AL CONSUMIDOR en representación de ASJA<br><br>**Parte recurrida**<br><br>v.<br><br>LUMA ENERGY, LLC Y LUMA ENERGY SERVCO, LLC<br><br>**Parte recurrente** | **TA2026RA00046** | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Junta Reglamentadora de Servicio Público Negociado de Energía Eléctrica<br><br>Caso Núm.:<br>**NEPR-QR-2025-0327**<br><br>Sobre:<br>**Notificación de la Querella y Citación mediante Correo Electrónico** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparece ante nos, LUMA Energy, LLC y LUMA Energy ServCo, LLC, en adelante, LUMA o recurrente, solicitando nuestra revisión de la *"Resolución Interlocutoria y Orden"* notificada por el Negociado de Energía de Puerto Rico, en adelante, NEPR o recurrida, del 29 de diciembre de 2025. En la misma, la recurrida declaró *"No Ha Lugar"* la solicitud de desestimación de la recurrente.

Por los fundamentos que expondremos a continuación, *desestimamos el recurso.*

**I.**

El 4 de octubre de 2025, la Asociación Acueducto Juan Ascencio, Inc., representada por la Oficina Independiente en Protección al Consumidor, en adelante, OIPC, presentó una "Querella" ante el NEPR contra LUMA.[1] En la misma, solicitó a la

---
[1] Apéndice del recurso, Anejos 1 y 2.

recurrida que ordenara a la recurrente a intervenir con unos problemas de voltajes enfrentados por los representados de la OIPC. El 7 de octubre de 2025 se expidió la citación a LUMA. El 9 de octubre de 2025, la OIPC notificó a la recurrente de la querella y la citación mediante correo electrónico.[2]

Posteriormente, la OIPC presentó una *"Moción Informativa y Solicitud de Anotación de Rebeldía"* el 30 de octubre de 2025, por no haber respondido LUMA a la querella en el término de veinte (20) días concedidos.[3] El 31 de octubre de 2025, el NEPR le concedió diez (10) días adicionales a la recurrente para presentar alegación responsiva.[4] Así, el 10 de noviembre de 2025, LUMA presentó una *"Moción en Cumplimiento de Orden y en Solicitud de Desestimación"*, alegando que la notificación de la querella – mediante correo electrónico – fue contraria a derecho, por lo que la agencia recurrida carecía de jurisdicción, y procedía la desestimación de la querella.[5]

El 25 de noviembre de 2025, el NEPR emitió una *"Resolución Interlocutoria y Orden"* en la que declaró *"No Ha Lugar"* la petición de desestimación, y concedió veinte (20) días a LUMA para presentar alegación responsiva.[6]

Inconforme, el 15 de diciembre de 2025, la recurrente solicitó al NEPR que reconsiderara.[7] Sin embargo, el 29 de diciembre de 2025, la agencia recurrida declaró *"No Ha Lugar"* la petición de reconsideración.[8]

Por su parte, el 28 de enero de 2026, LUMA recurrió ante esta Curia con un *"Recurso de Revisión Judicial"*, en el que hizo el siguiente señalamiento de error:

---

[2] Apéndice del recurso, Anejo 2.
[3] *Íd.*
[4] *Íd.*
[5] *Íd.*, Anejo 2.
[6] *Íd.*, Anejo 4.
[7] *Íd.*, Anejo 4.
[8] *Íd.*, Anejo 1.

**ERRÓ EL NEPR AL DENEGAR LA SOLICITUD DE DESESTIMACIÓN POR FALTA DE NOTIFICACIÓN ADECUADA DE LA QUERELLA, A PESAR DE NO HABERSE PERFECCIONADO SU JURISDICCIÓN PARA ATENDER EL ASUNTO.**

Al amparo de la facultad conferida por la Regla 7(B)(5) de nuestro Reglamento, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), prescindimos de la comparecencia del recurrido, y procedemos a expresarnos.[9]

## II.

### A. Revisión Administrativa

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Vázquez et al. v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008).

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalacqua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,

---

[9] Esta regla nos permite "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante [nuestra] consideración, con el propósito de lograr su más justo y eficiente despacho [...]". Reglamento del Tribunal de Apelaciones, supra.

en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677. A tales efectos, la Sección 4.1 de la LPAUG, supra, sec. 9671, dispone que el Tribunal de Apelaciones, mediante Recurso de Revisión, podrá revisar "órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos". Por su parte, la Regla 56 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 75, 215 DPR ___ (2025), dispone que este Foro podrá pasar juicio sobre "las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias *finales* dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley". (Énfasis nuestro).

Por otro lado, el Art. 4.006, de la Ley de la Judicatura de 2003, en adelante, Ley Número 201-2003, 4 LPRA sec. 24y, establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que este Foro conocerá mediante recurso de revisión judicial, las decisiones, órdenes y resoluciones *finales* de organismos o agencias administrativas. *Simpson, Passalacqua vs. Quirós, Betances,* supra*; AAA v. UIA,* 200 DPR 903, 910-911 (2018); *Depto. Educ. v. Sindicato Puertorriqueño*, supra, pág. 543; *Procuradora Paciente v. MCS,* 163 DPR 21, 33-34 (2004).

La LPAUG, supra, sec. 9675 dispone que, "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). Tanto la referida Ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en

determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006); *T‑JAC* v. *Caguas Centrum,* 148 DPR 70, 80 (1999).

La Sec. 4.2 de la LPAUG, supra, sec. 9672, también establece que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las órdenes o *resoluciones finales,* luego de que el recurrente haya agotado "todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente". Es decir*, no serán revisables directamente a este Tribunal las órdenes o resoluciones interlocutorias de una agencia, esto es, aquellas que se emitan durante los procesos administrativos que se desarrollan por etapas, y no sean finales.* A esos efectos, esta misma sección provee que la disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

Por su parte, la Sección 1.3 de la LPAUG, supra, sec. 9601, define "orden o resolución" como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas, excluyendo órdenes ejecutivas emitidas por el Gobernador". Además, la precitada sección define "orden interlocutoria" como "aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". *Simpson, Passalacqua vs. Quirós, Betances,* supra.

A pesar de que la LPAUG no define el término "orden o resolución final", esta contiene una descripción de lo que tiene que incluir para ser considerada final. *Simpson, Passalacqua vs. Quirós, Betances,* supra. En su Sección 3.14, supra, sec. 9654, este cuerpo estatutario requiere que se incluyan determinaciones de hecho y las

conclusiones de derecho que fundamentan la adjudicación, además de añadir la advertencia del derecho a solicitar una reconsideración o revisión, según sea el caso. *J. Exam. Tec. Méd. v. Elías et al.,* 144 DPR 483, 489-490 (1997). Específicamente, el precitado Artículo reza de la siguiente manera:

> La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley. La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos. La agencia deberá especificar en la certificación de sus órdenes o resoluciones los nombres y direcciones de las personas naturales o jurídicas a quienes, en calidad de partes, les fue notificado el dictamen, a los fines de que estas puedan ejercer efectivamente el derecho a la revisión judicial conferido por ley. La agencia deberá notificar con copia simple por correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible, y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma.
>
> [...]
>
> LPAUG, supra, sec. 9654

El fiel cumplimiento de estos requisitos, procura "proteger a las agencias y evita[r] [que los tribunales interfieran] con sus dictámenes hasta que adquieran finalidad y sus efectos se puedan sentir de forma concreta sobre las partes". *Crespo Claudio v. O.E.G.,* 173 DPR 804, 814 (2008).

Por su parte, el Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y (ii) que la resolución sea final y no interlocutoria. *Simpson, Passalacqua vs. Quirós, Betances,* supra. *Depto. Educ. v. Sindicato Puertorriqueño,* supra, pág. 543; *Procuradora Paciente v. MCS,* supra, págs. 34-35.

## B. Jurisdicción

Como es conocido, la jurisdicción es el poder o la autoridad que tiene un Tribunal para considerar y decidir casos o controversias que tienen ante sí. *Mun. Río Grande v. Adq. Finca et al*, 2025 TSPR 36, 215 DPR ___ (2025); *Freire Ruiz et al. v. Morales, Hernández,* 2024 TSPR 129, 215 DPR ___ (2024); *Mun. Aguada v. W. Const. y Recovery Finance,* 214 DPR 432, 448 (2024); *R & B Power Inc. v. Junta de Subastas ASG,* 213 DPR 685, 698 (2024); *Matos, Sostre v. Registradora,* 213 DPR 348, 354 (2023); *FCPR v. ELA et al.,* 211 DPR 521, 529 (2023); *Pueblo v. Torres Medina,* 211 DPR 950, 958 (2023); *Cobra Acquisitions, LCC v. Mun. Yabucoa et al.,* 210 DPR 384, 394 (2022); *Pueblo v. Rivera Ortiz,* 209 DPR 402, 414 (2022); *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021). Además, es norma reiterada en nuestro ordenamiento, que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen". *Markovic v. Meldon y otro,* 2025 TSPR 99, 216 DPR ___ (2025); *Mun. Río Grande v. Adq. Finca et al,* supra; *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007).

La jurisdicción se refiere a la capacidad que tiene un tribunal para atender y resolver controversias sobre determinado aspecto legal. *Greene, et als. v. Biase et als.,* 2025 TSPR 83, 216 DPR ___

(2025); *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014). Ante la falta de jurisdicción, el tribunal debe así declararlo y proceder a la desestimación del recurso, toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho, pues la ausencia de jurisdicción es insubsanable. *Pueblo v. Rios Nieves*, 209 DPR 264, 273 (2022); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018); *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2012); *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003). Lo cierto es que **la falta de jurisdicción es un defecto que no puede ser subsanado.** *Con. Tit. 76 Kings Court v. MAPFRE*, 208 DPR 1018, 1027 (2022); *Lozada Sánchez et al. v. JCA.*, 184 DPR 898, 909 (2012).

Por su parte, en la práctica apelativa, las partes vienen obligadas a cumplir con las disposiciones legales y reglamentarias aplicables para la tramitación eficaz de sus recursos. *Matos v. Metropolitan Marble Corp.*, 104 DPR 122, 125 (1975). Para que estemos en posición de revisar al Foro Recurrido, la parte que recurra ante nos **tiene la obligación de perfeccionar su recurso**, según lo exige la Ley y nuestro Reglamento. *Morán v. Martí*, 165 DPR 356, 363 (2005).

Relativo al caso de autos, la Regla 83 del Reglamento del Tribunal de Apelaciones, supra, dispone que este Foro, a **iniciativa propia** o a solicitud de parte, podrá desestimar un recurso por cualquiera de estos motivos:

1. **que el Tribunal de Apelaciones carece de jurisdicción;**
2. que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;
3. **que no se ha presentado o proseguido con diligencia o buena fe;**

4. que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos;

5. que el recurso se ha convertido en académico.

(Énfasis suplido).

**III.**

La recurrente solicita revisión de un dictamen administrativo interlocutorio. Aduce que la agencia recurrida no tiene jurisdicción, por notificación inadecuada. Sin embargo, luego de una detenida evaluación de los planteamientos de LUMA, y el razonamiento del NEPR, justipreciamos que la recurrida no ha obrado de manera *ultra vires*, ni se ha extralimitado en sus facultades al concluir que la notificación de la OIPC fue conforme a derecho.

Luego de una somera lectura de la resolución impugnada, no albergamos duda que la misma *no constituye un dictamen final* del NEPR. Las órdenes interlocutorias son aquellas que se emiten durante los procesos administrativos que se desarrollan por etapas, y no sean finales. La LPAUG, supra, establece una serie de criterios necesarios para que una orden o resoluciones pueda ser catalogada final, como la inclusión de determinaciones de hechos, conclusiones de derecho, advertencias de revisión, entre otros. Aunque el dictamen recurrido cuenta con conclusiones de derecho, lo cierto es que de las advertencias surge que la recurrente no tiene derecho a recurrir a este Foro mediante recurso de revisión judicial. Luego de la disposición del NEPR, la resolución interlocutoria expresa lo siguiente:

Una parte adversamente afectada por una determinación interlocutoria o parcial emitida por un oficial examinador del Negociado de Energía podrá presentar una moción de reconsideración ante el oficial examinador. Sin embargo, las determinaciones interlocutorias o parciales de los oficiales examinadores del Negociado de Energía no son revisables ante el Pleno del Negociado de Energía, ni ante el Tribunal de Apelaciones. Las recomendaciones finales de los oficiales

examinadores tampoco son revisables ante el Pleno del Negociado de Energía ni el Tribunal de Apelaciones.

Más adelante, surgen las advertencias para la revisión judicial apelativa, una vez el NEPR emita una orden o resolución final. A esos efectos, la resolución dispone que:

Una vez el Pleno del Negociado de Energía emita una orden o resolución final, la parte adversamente afectada podrá presentar una solicitud de reconsideración ante el Negociado, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden. El Pleno del Negociado de Energía, dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión judicial ante el Tribunal de Apelaciones comenzará a decursar nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión judicial ante el Tribunal de Apelaciones comenzará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución del Negociado resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la presentación de la moción de reconsideración. Si el Negociado acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido presentada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que el Negociado, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

Una parte adversamente afectada por una orden o resolución final del Negociado de Energía y que haya agotado todos los remedios ante el Negociado de Energía, podrá presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días, contados a partir

de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final del Negociado o a partir de la fecha aplicable de las dispuestas en el párrafo anterior, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

Según expresáramos previamente, para que una parte pueda recurrir ante nos de un dictamen administrativo, debe agotar los remedios provistos por la agencia, y *que la misma sea final.* Según señalado, la recurrente ya agotó los remedios disponibles por la agencia para una resolución interlocutoria, al solicitar la reconsideración de la misma. Conforme al texto del propio dictamen, LUMA esta vedado de recurrir ante nos de la resolución en cuestión por no ser esta final.

Entendemos que la resolución recurrida es, conforme lo establecido en la LPAUG y la jurisprudencia, de *carácter interlocutorio.* La controversia en el caso de epígrafe continua viva en el foro administrativo, por lo que *carecemos de jurisdicción* para intervenir en esta etapa.

**IV.**

Por los fundamentos esbozados, *desestimamos el recurso de marras por falta de jurisdicción.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos está conforme y añade lo siguiente. Por no estar ante un caso en que la agencia carece de jurisdicción sobre el asunto sí, e impugnarse únicamente la forma en que la agencia recurrida ha ejercido, de manera interlocutoria, la jurisdicción que claramente tiene, procede la desestimación del recurso por prematuro.

No obstante, aun si tuviéramos jurisdicción, como aduce la parte recurrente, en los méritos, no tiene razón dicha

parte. Contrario a lo que plantea la recurrente, la efectividad de la ley que permite la notificación electrónica en casos administrativos no quedó sujeta a la aprobación de reglamentación alguna. Es decir, el hecho de que se haya dispuesto que las agencias deberán enmendar su reglamentación para ajustarla a la ley no significa que la validez y efectividad de la ley queda anulada simplemente porque la agencia no realice las enmiendas reglamentarias correspondientes. Es norma trillada que la reglamentación administrativa es válida únicamente en la medida que es compatible con la ley, no al revés.

Por otra parte, es también inmeritorio la sugerencia de la parte recurrente a los efectos de que, de su faz, la ley que autoriza la notificación electrónica es inconstitucional por violar su derecho a un debido proceso de ley. Tampoco procede que evaluemos la validez constitucional de la aplicación de esa ley a este caso, pues la recurrente ni siquiera ha alegado no haber recibido la notificación electrónica en controversia.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones